**Builders Supply & Coal Company, Appellee, v. R. J. Eggmann, Appellant.**

**(Not to be reported in full.)**

Appeal from the City Court of East St. Louis; the Hon. ROBERT H. FLANNIGAN, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 1, 1914. Rehearing denied and opinion extended October 28, 1914.

### Statement of the Case.

Petition filed in the City Court of East St. Louis, December 14, 1911, by the Builders Supply & Coal Company, a corporation, against R. J. Eggmann and Homer Crutchfield for a mechanic's lien against the west half of lot 15, Audubon place, East St. Louis. Later James F. Moorehead and others filed a petition in the same court for the same purpose and subsequently the East St. Louis Lumber Company filed a like petition. To these petitions additional defendants were afterwards added and a number of intervening petitions were filed by other claimants in said suits. At the September term, 1912, of said court, the three suits were consolidated and referred to the master to take the proofs and report the same and his findings. Objections were filed to the master's report which, being overruled, were later filed as exceptions

on the final hearing, when a decree was entered. From the joint decree, three separate appeals were taken, one by R. J. Eggmann, appellant in this case, one by James F. Moorehead and one by the East St. Louis Lumber Company.

This appeal is confined to the one taken by Eggmann. For the opinions of the Appellate Court on the other appeals see *Moorehead v. Eggmann, post* p. 578, and *East St. Louis Lumber Co. v. Eggmann, post,* p. 580.

On April 18, 1911, R. J. Eggmann, T. P. Eggmann and Horace J. Eggmann were associated together in the real estate business and in pursuance thereof bought vacant lots and built houses thereon, to be sold or rented. On that date they purchased vacant real estate which included that above described and gave a mortgage on the whole tract to William Urban for $1,675. On June 27, 1912, when the amount due on the mortgage had been reduced to $875, the balance was paid to Urban and the note assigned to Horace J. Eggmann, who at the time of the trial held it as trustee for the firm. On July 1, 1911, the following contract was entered into by appellant with Homer Crutchfield:

"East St. Louis, Ill., July 1, 1911.

"This is an agreement by and between R. J. Eggmann and Homer Crutchfield as follows: The said Crutchfield agrees to purchase the west one-half of lot 15, Audubon place, Lansdowne, East St. Louis, Ill., of the said R. J. Eggmann for the sum of six hundred dollars ($600); said amount of six hundred dollars to be taken out of a loan for twenty-five hundred dollars which said Eggmann agrees to make the said Crutchfield on a certain brick cottage as per plans submitted, same to be built on the above described lot, said house to be started within one week of this date and to be completed by September 1, 1911. All expenses of loan and insurance to be paid by Crutchfield. In case of shortage in funds, the said Eggmann agrees to take four hundred fifty dollars upon the completion of the loan and take back second mortgage for the sum of

one hundred fifty dollars on the above described property. Mortgages are to be made by Crutchfield and wife and upon the completion of said mortgages said Crutchfield agrees to make deed to said R. J. Eggmann as further security. It is agreed by and between the parties hereto that the net profits derived from the sale of this property or rental of same to be equally divided between the parties hereto. Nothing in this contract shall be construed to affect any of the stipulations in mortgage to be made. This agreement to remain in full force and effect for two years from this date and the said Eggmann is to collect all rents or monthly payments in case said property is rented or sold on monthly payments. Moneys so received are to take care of interest on mortgages and the payment of the said second mortgage should there be one, after which said money received is to be equally divided between the parties hereto.

R. J. Eggmann."

This contract was not signed by Crutchfield, but he appears to have adopted the same as his own and proceeded to have the house provided for therein erected on the premises. He purchased the necessary materials therefor from appellee and other dealers and made contracts with mechanics for its construction, which was done with the knowledge and consent of appellant. The work was visited several times a week by T. P. Eggmann who testified that he acted as agent for appellant in that matter. After the house was substantially completed, it was discovered that the work and material were costing far in excess of the amount contemplated and further execution of the contract was abandoned. Among the claims growing out of the matter which were unpaid was one of appellee's for $154.26 for material used in the building and $59.35 for money advanced to pay for labor. There was also due and unpaid to J. Steinkopf the sum of $148.59 for material furnished and labor done in plastering the house, which account was purchased by and assigned to appellee by Steinkopf and the assignment presented

to and accepted by Crutchfield. Appellee furnished the last of the material for which he claims on October 27, 1911, and his attorney testified that on November 25, 1911, he served on appellant a notice addressed to appellant and Crutchfield, showing there was $303 due appellee. On December 14, 1911, appellee filed the petition above referred to, to enforce a lien against said premises, stating that during the month of July, 1911, Homer Crutchfield applied to petitioner for terms on which petitioner would furnish building supplies, lime and cement to be installed in the building then being erected on the property above described; that prices were given him and a contract agreed upon and material furnished to the amount of $362.20, an itemized statement of said bill being affixed and attached to the petition and made a part of the same. It was also alleged that appellant was the owner of the property and knowingly permitted Crutchfield to improve it. The statement attached sets out in detail the material furnished amounting to $154.26, the several amounts of cash advanced by petitioner for labor amounting to $59.35, and the contract for material furnished and work done in plastering the house, amounting to $148.59, making a total of $362.20. The master in his report found, among other things, that appellee gave appellant a legal subcontractor's notice within sixty days after the last material was furnished; also that appellant and Crutchfield were partners and that such notice was unnecessary; that appellee was entitled to its lien for material and the Steinkopf claim assigned to it, but was not entitled to the lien for $59.35 cash advanced by it; that Horace J. Eggmann held the mortgage assigned to him in trust for the firm and it should have been satisfied out of the proceeds of the parts of the lot already sold; that the mechanics' liens asked for were superior to any lien of said mortgage. On the final hearing the court entered a decree finding that a sufficient notice had

been given that appellee was entitled to a lien for the amount found by the master and that the mortgage assigned to Horace J. Eggmann, trustee, had merged with the fee and the lien thereby became released. The decree appeared to proceed on the theory that Crutchfield was a contractor and that those who contracted with him were subcontractors and that a subcontractor's notice was necessary but that as above stated, such notice had been given in this case.

Appellant contended that the proofs were too inconsistent with the petition and statement attached thereto to warrant the court in entering the decree; that the claim for cash advanced for labor included in appellee's petition and statement, was a fraud and defeated its right to a lien for any amount; that appellee was a subcontractor and the notice given by it was not properly signed and that there was not sufficient proof of its service or the delivery of the material claimed for; that, in any event, appellee could only recover for the material furnished and not for the Steinkopf bill for plastering assigned to it.

E. W. EGGMANN, for appellant.

JAY F. VICKERS, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

### Abstract of the Decision.

1. MECHANICS' LIENS, § 57*—*when person contracting for work and materials not a contractor.* A written contract between two parties whereby one sold to the other a lot to be paid for out of a loan made to the purchaser by the seller for the purpose of enabling the purchaser to build thereon, *held* not to show any employment of the purchaser to contract for the building or that there was to be any joint ownership of the property, but to show that the seller was to part with his title, and that therefore the purchaser in contracting

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

for work and materials could not be considered as a contractor within the meaning of the Mechanics' Liens Act.

2. MECHANICS' LIENS, § 56*—*when persons furnishing labor and materials not subcontractors.* Where a person who contracts with others for labor and materials to build a house is the purchaser of the lot on which the house is to be built and has no contract by which he is to build, or furnish work and materials for the vendor who retained the legal title, he is not a contractor within the meaning of the Mechanics' Lien Act (J. & A. ¶ 7139), and persons contracting directly with him to furnish labor and materials are principal contractors and not subcontractors so as to be required to give notice to owner.

3. MECHANICS' LIENS, § 35*—*when vendor of property cannot defend against lien.* Where a purchaser of a lot contracted with others for labor and materials to build a house thereon but had no contract with the vendor to do so, *held* that the fact that the legal title remained vested in the vendor could not be availed of by the latter as a defense to a suit for a lien on the property, where he authorized or knowingly permitted the purchaser to contract for the improvement.

4. MECHANICS' LIENS, § 134*—*right of assignee of claim to enforce lien.* Where a lien claimant takes an assignment of a lien claim of another with the consent of the owner of the premises he is entitled under section 22 of the Mechanics' Liens Act (J. & A. ¶ 7146) to include the assigned claim with his own in filing his petition for lien.

5. MECHANICS' LIENS, § 103*—*when excessive claim defeats lien.* The wilful and fraudulent filing of a claim for an excessive amount may, under some circumstance, defeat the allowance of a mechanic's lien.

6. MECHANICS' LIENS, § 103*—*when excessive claim will not defeat lien.* The fact that a lien claimant included in its statement money advanced for labor performed on the premises, *held* not to show any fraud was committed or contemplated by it which would defeat its right to the allowance of a lien for the amount to which it was entitled.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.